J-A29029-22
J-A29030-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: A.V.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: E.L.E., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 748 WDA 2022 |

Appeal from the Decree Entered June 1, 2022
In the Court of Common Pleas of Blair County Orphans' Court at No(s):
No. 2022 AD 13

| | | |
|---|---|---|
| IN RE: S.B.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: E.L.E., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 749 WDA 2022 |

Appeal from the Decree Entered June 1, 2022
In the Court of Common Pleas of Blair County Orphans' Court at No(s):
2022 AD 13B

| | | |
|---|---|---|
| IN RE: M.E.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: E.L.E., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 750 WDA 2022 |

Appeal from the Decree Entered June 1, 2022
In the Court of Common Pleas of Blair County Orphans' Court at No(s):
2022 AD 13A

J-A29029-22
J-A29030-22

IN RE: S.B.W., A MINOR                  :    IN THE SUPERIOR COURT OF
                                        :          PENNSYLVANIA
                                        :
APPEAL OF: J.W.W., FATHER               :
                                        :
                                        :
                                        :
                                        :
                                        :
                                        :    No. 757 WDA 2022

Appeal from the Decree Entered June 1, 2022
In the Court of Common Pleas of Blair County Orphans' Court at No(s):
2022 AD 13B

BEFORE:  BENDER, P.J.E., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY OLSON, J.:                       **FILED:  February 9, 2023**

E.L.E. ("Mother") appeals from the decrees dated May 31, 2022, and entered June 1, 2022,[1] in the Court of Common Pleas of Blair County, involuntarily terminating her parental rights to M.E.C., born in November 2007, A.V.C., born in August 2008, and S.B.W., born in April 2020 (collectively, "the Children").  J.W.W. ("Father") also appeals from the decree

_____

[1] While dated May 31, 2022, the decrees were not entered for purposes of Pa.O.C.R. 4.6(b) until June 1, 2022, upon the docketing of notice.  ***See*** Pa.O.C.R. 4.6(b) (stating, "The clerk shall note in the docket the date when notice was given to the party or to his or her counsel under subparagraph (a) of this Rule"); Pa.O.C.R. 4.6 Note (noting that the Rule is "derived from Pa.R.C.P. No. 236"); ***see also Frazier v. City of Philadelphia***, 735 A.2d 113, 115 (Pa. 1999) (holding that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given"); ***see also*** Pa.R.A.P. 108(a) (entry of an order is designated as "the day on which the clerk makes the notation in the docket that notice of entry of the decree has been given as required by Pa.R.C.P. 236(b)").

- 2 -

entered on June 1, 2022, which involuntarily terminated his parental rights as

to S.B.W.[2]  After review, we affirm.

The orphans' court set forth the following findings of fact:

2. The biological mother of all three children is E.L.E.  The biological father of M.E.C. and A.V.C. is V.C., since deceased. J.W.W. is the biological father of S.B.W.

. . .

4. The initial dependency case came to the attention of Dauphin County Social Services for Children and Youth [("DCSSCY") or "the Agency")] on February 8, 2021, when the Agency received a general protective services referral concerning [Mother], V.C. and the [C]hildren.  Per the referral information, law enforcement responded to [V.C.]'s home due to V.C. reportedly overdosing. V.C. was revived with NARCAN and transported to the Middletown Borough Police Department, where he admitted to recent use of heroin.  Law enforcement found drug paraphernalia along with heroin, methamphetamines and pills within the home.  [Mother] initially refused to provide a urine screen and attempted to leave the residence with S.B.W.  She subsequently provided a urine screen which was positive for amphetamines, morphine, oxycodone[,] and methamphetamines.

5. The minor children, M.E.C. and A.V.C., were adjudicated dependent and placed in the continuous care and custody of the Agency on February 19, 2021.

6. The minor child, S.B.W., was adjudicated dependent on February 19, 2021[,] and placed under Third Party Court Ordered Protective Supervision in the physical care and custody of his maternal grandparents, S.H. and D.H.

---

[2] Mother and Father raise similar issues for our consideration, which arise from the same set of facts, and the orphans' court addressed their appeals together. As such, we review their appeals together.

7. On May 18, 2021, S.B.W. remained under Court Ordered Protective Supervision and legal and physical care and custody was returned to [Mother].

8. M.E.C. and A.V.C. were placed in the Families United Network kinship foster home of their paternal aunt and uncle, T.G. and S.G., who reside in Altoona, Blair County, Pennsylvania.

9. The [C]hildren were found to be dependent under and pursuant to 42 Pa.C.S.A § [6302(1)].

10. On September 15, 2021, upon consideration of a Motion of Transfer Jurisdiction pursuant to [Pa.R.J.C.P.] 1302 by the Dauphin County Agency, the Honorable John F. Cherry, President Judge, entered an Order transferring the case to Blair County.

11. On September 29, 2021, the Honorable Wade A. Kagarise entered an Order accepting transfer and jurisdiction of this dependency case.

12. On November 3, 2021, a 9th Month Interim Permanency/Dispositional Review Hearing was held before Blair County Juvenile Court Hearing Officer, James F. Adams, Esquire, after which an Order was entered that same date finding[, *inter alia*, that all three children remained dependent; that M.E.C. and A.V.G. remain in the home of their aunt and uncle, S.G. and T.G., and were doing well; that [M]other was incarcerated on felony drug charges on or about September 24, 2021 and, as a result, [Blair County Children, Youth, & Families ("BCCYF" or "the Agency")] obtained emergency protective custody of S.B.W. on September 30, 2021 and placed him in an undisclosed foster home; and that V.C., the father of M.E.C. and A.V.C., was found dead on or about September 29, 2021 as a result of a suspected drug overdose. It was further found by Hearing Officer Adams that J.W.W., the father of S.B.W., had also been incarcerated on felony drug charges.[3]

13. Hearing Officer Adams also found that "Family finding has been conducted by the Agency with a number of family members indicating concerns about S.B.W.'s safety in light of his parents alleged drug activity."

---

[3] Father was incarcerated on or about August 26, 2021. Permanency Review Order, 3/21/22, at 2.

- 4 -

14. Hearing Officer Adams continued both legal and physical custody of the subject children in BCCYF.

15. At the time of entry of the November 3, 2021 Permanency Review Order, Hearing Officer Adams discontinued family finding, determining that it no longer served the best interest of the children. Said Permanency Review Order was adopted as an Order of Court by Judge Kagarise on November 8, 2021.

16. After a 12th Month Permanency/Dispositional Review Hearing held on February 11, 2022, a Permanency Review Order was entered that same date by Hearing Officer Adams finding, *inter alia*, that the [C]hildren remain dependent; that M.E.C. and A.V.C. remained in the home of their paternal aunt and uncle, S.G. and T.G. and were doing very well in such home; that the children were living a healthier lifestyle, as evidenced by the fact that A.V.C. had lost 70 pounds since his placement with S.G. and T.G.; that neither child had any contact with [Mother] and they did not express a desire to have such contact; and that S.G. and T.G. were willing to be a permanent resource for these two children.

17. In his February 11, 2022 Permanency Review Order, Hearing Officer Adams also found that S.B.W. was doing well in the confidential resource home and that he was having virtual visits with his parents. At the time of the hearing, both [Mother] and [Father] remained imprisoned on their felony drug charges and lengthy prison sentences were anticipated if they were convicted of same. S.B.W.'s placement resource confirmed that she was willing to be a permanent resource. . . .

18. Hearing Officer Adams continued legal and physical custody of the subject children in BCCYF and his Order was adopted as an Order of Court by Judge Kagarise on February 28, 2022.

19. On March 8, 2022, a hearing was held relative to a Motion for 13th Month Interim Review Hearing/Goal Change, after which a Court Order was entered by [the orphans' court] on March 21, 2022 granting BCCYF's request to change the goal to adoption, which had previously been the concurrent goal.

20. At the time of hearing, both parents remained incarcerated at the Blair County Prison with pending felony drug cases and with each facing a significant period of incarceration if convicted of same.

21. In [the orphans' court's] findings, [it] indicated that M.E.C. and A.V.C. are doing very [*sic*] and thriving in the home of S.G. and T.G. As S.G. testified during [the] hearing, these children are ["]loving their lives and are very settled.["] [The orphans' court] also found as follows: S.G. testified that when the children first came to reside with them, there was not structure [or] routine in their lives. They were not bathing regularly, both were extremely overweight and they did not engage in healthy activities. Since their transition to [S.G. and T.G.], [the children] have adjusted well to the structure and routine. Both children have lost a lot of weight and engage in healthy activities with the family. Further, both are honor roll students.

22. [The orphans' court] also found that S.B.W. was doing very well in his foster home placement. Both placement resources indicated that they were willing to be adoptive resources for the subject children.

23. In [its] March 21, 2022 Permanency Review Order, [the orphans' court] found that "S.B.W. has adapted very well to his foster parents, who provide him a loving, safe and stable home environment. The foster parents have established a loving bond with S.B.W."

24. [The orphans' court] also discontinued family finding, determining that it no longer serve[d] the best interest of the children, in [its] March 21, 2022 Permanency Review Order.

. . .

Orphans' Court Opinion, 8/8/22, at 7-12 (citations omitted).

On April 22, 2022, the Agency filed petitions for the termination of Mother's and Father's parental rights. The orphans' court held a combined permanency review/termination hearing on May 24, 2022.[4] Mother and

---

[4] The court incorporated the dependency records from both Dauphin and Blair Counties. N.T., 5/24/22, at 6-7.

Father, who remained incarcerated, were represented by counsel.[5]  The

Children were represented by counsel, Tyler Rowles, Esquire.[6]  At the time,

A.V.C. and M.E.C. were almost 14 years old and approximately 14½ years old,

respectively, and S.B.W. was two years old.  The Agency presented Exhibits 1

_____

[5] It is unclear from the record if Mother and Father were physically present or participated remotely.

[6] Pursuant to Rule Returnable dated April 27, 2022, the court appointed Attorney Rowles as guardian *ad litem* and legal counsel.  At the termination hearing, Attorney Rowles confirmed that no conflict existed in his representation of the Children's best interests and legal interests, which the court accepted.  N.T., 5/24/22, at 4-5.  We deem this to satisfy Section 2313(a).  **See *In re Adoption of K.M.G.,*** 240 A.3d 1218, 1224 (Pa. 2020) (reiterating, "[A]n attorney appointed as counsel to represent a child's legal interests may also serve as the child's guardian *ad litem* ("GAL"), responsible for asserting the child's best interests, so long as the child's legal interests do not conflict with the attorney's view of the child's best interests."); ***see also In re A.J.R.O.***, 270 A.3d 563, 570 (Pa. Super. 2022) (stating, "[W]here the orphans' court has appointed a single attorney to serve as [GAL] and legal counsel to represent both the child's best interests and legal interests, [our Supreme Court] concluded an appellate court should review *sua sponte* whether the court made a determination that those interests did not conflict."  The Court "cautioned that 'appellate review of this question does not involve second-guessing whether GAL/Counsel in fact had a conflict but solely whether the orphans' court made the determination in the first instance.'" (citations omitted) (brackets in original); ***see also In re T.S.***, 192 A.3d 1080, 1092-93 (Pa. 2018) (holding, "[I]f the preferred outcome of a child is incapable of ascertainment because the child is very young and pre-verbal, there can be no conflict between the child's legal interests and his or her best interests; as such, the mandate of Section 2313(a) of the Adoption Act" is satisfied.).

Attorney Rowles argued in support of termination of parental rights.  N.T., 5/24/22, at 27-20.  He further filed a brief with this Court in favor of termination of Mother's parental rights and submitted a letter joining the Agency's brief in favor of termination of Father's parental rights.

through 6 which were admitted without objection.[7] N.T., 5/24/22, at 7, 9-10, 16-18. The Agency further noted the recent testimony of the Children's respective foster mothers from the March 2022 permanency review/goal change hearing. *Id.* at 18. Neither Mother nor Father testified on their own behalf or offered any evidence. By decrees dated May 31, 2022, the orphans' court terminated Mother's parental rights to M.E.C., A.V.C., and S.B.W., and Father's parental rights to S.B.W.[8]

As to this hearing, the court continued:

. . .

25. After a . . . [h]earing held May 24, 2022, a Permanency Review Order was entered on May 31, again finding that all children remained dependent[,] and [the orphans' court] continued legal and physical custody in BCCYF.

26. [The orphans' court] once again found that M.E.C. and A.V.C. were thriving in the home of T.G. and S.G., their paternal uncle and aunt, who are an adoptive resource.

27. At the time of entry of [the] Permanency Review Order on May 31, 2022, both parents remained incarcerated at the Blair County Prison, facing significant state sentences if convicted of their felony drug offenses.

28. More specifically, [Father] is currently charged with Criminal Conspiracy (Object Crime Possession with the Intent to

---

[7] As to Exhibits 2 and 3, the criminal complaints as to Father and Mother, respectively, the parties stipulated that the relevant witnesses would testify consistent with the information in the complaint if called to testify. N.T., 5/24/22, at 10.

[8] We observe that the court entered separate decrees as to each child. Further, the court entered a singular decree as to S.B.W. terminating both Mother's and Father's parental rights.

Deliver/Delivery); four counts of [Possession With Intent to Deliver a controlled substance ("PWID")]; four counts of Possession of a Controlled Substance; Use/Possession of Drug Paraphernalia; Criminal Use of a Communication Facility; Conspiracy to Violate Section 911 § B (1); Dealing in Proceeds of Unlawful Activities; and Knowledge that Property is Proceeds of Illegal Activity. [Petitioner's Exhibit #2 from March 8, 2022 Permanency Review Hearing].[9]

29. [Mother] is currently facing charges for Criminal Conspiracy (Object Crime Possession with the Intent to Deliver/Delivery); two counts of PWID; two counts of Possession of Controlled Substance; Use/Possession of Drug Paraphernalia; Criminal Use of a Communication Facility; Corrupt Organization; and Dealing in Proceeds of Unlawful Activities (two counts).[10]

30. [Father] has a lengthy prior criminal history, consisting of prior convictions in Blair County for the following:

CR 1378-2002: PWID and Use/Possession of Drug Paraphernalia

CR 197-2009: PWID and Resisting Arrest

---

[9] As reflected by supplemental record, on September 14, 2022, Father pleaded guilty to the following: conspiracy-manufacture, delivery, or possession; manufacture, delivery, or possession with intent to manufacture or deliver (four counts); intentional possession of a controlled substance (four counts); use/possession of drug paraphernalia; criminal use of communication facility; corrupt organizations; conspiracy to violate Section 911(b)(1), (b)(2), and (b)(3); dealing in proceeds of unlawful activity; and knowledge that property is proceeds of illegal act. Order, 9/27/22, Exhibit A. The court scheduled sentencing for November 28, 2022. *Id.*

[10] As reflected by supplemental record, on October 6, 2022, Mother pleaded guilty to the following: conspiracy-manufacture, delivery, or possession; manufacture, delivery, or possession with intent to manufacture or deliver (four counts); use/possession of drug paraphernalia; criminal use of communication facility; corrupt organizations; dealing in proceeds of unlawful activity; and knowledge that property is proceeds of illegal act. Order, 12/1/22, Exhibit A. The court sentenced Mother to a period of incarceration of four and a half to ten years, plus a consecutive period of fifteen years' probation. *Id.*

> CR 2315-2010: PWID, Recklessly Endangering Another Person; Possession of Liquified Ammonia with Intent to Manufacture Controlled Substances
>
> CR 1316-2019: Use/Possession of Drug Paraphernalia
>
> 31. Relative to the pending criminal charges against [Father] and [Mother], which were filed by the Affiants, Detective Sergeant Christopher Moser, of the Altoona Police Department and Agent Jarod Quist of the Pennsylvania Office of Attorney General, with an incident date of August 26, 2021, the items allegedly seized from [Mother and Father's] vehicle as a result of a search warrant are six pounds of methamphetamines; 4.6 ounces of cocaine; 21 grams of suspected fentanyl; 1 gram of heroin; drug paraphernalia; a cell phone; and $1,901.00 in U.S. currency. It is also alleged in the Affidavit of Probable Cause that [Mother] provided police a statement implicating both herself and [Father], including allegedly stating that the source of the drugs was a Puerto Rican male and that it was common for both she and [Father] to meet with their source every two weeks to re-up their supply.
>
> . . .

Orphans' Court Opinion, 8/8/22, at 12-14 (citations omitted).

Thereafter, on June 21, 2022, Mother, through counsel, filed timely notices of appeal, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Mother's appeals were consolidated by this Court *sua sponte* on July 18, 2022. The orphans' court filed an Opinion and Supplemental Opinion on July 18, 2022 and July 29, 2022, respectively. The court then filed a Rule 1925(a) Opinion on August 8, 2022.[11]

On appeal, Mother raises the following issue for our review: "Whether the honorable [orphans'] court erred in terminating the parental rights of []

_____

[11] We refer to these as Opinion, Supplemental Opinion, and Rule 1925(a) Opinion herein.

Mother, when Mother was an applicant for the [c]ourt's diversional Drug Court [p]rogram?" Mother's Brief at 4 (unnecessary capitalization omitted).

As to Father, in contravention of the appellate rules, on June 27, 2022, Father filed a timely notice of appeal, *pro se*, although still represented by court-appointed counsel. **See Commonwealth v. Ellis**, 626 A.2d 1137, 1139 (Pa. 1993) (emphasizing that hybrid representation is forbidden on appeal). Moreover, Father failed to file a concise statement of errors complained of on appeal (hereinafter, "concise statement") with his *pro se* appeal as required. **See** Pa.R.A.P. 1925(a)(2)(i) (providing that, in a Children's Fast Track matter, "The concise statement of errors complained of on appeal shall be filed and served with the notice of appeal."). As a result of these missteps, pursuant to order of July 1, 2022, this Court directed counsel for Father to be served with Father's *pro se* appeal and, *inter alia*, to file a concise statement in the trial court and this Court on or before July 11, 2022. Counsel filed a notice of appeal on July 11, 2022,[12] along with a concise statement. While counsel failed to file the concise statement in this Court as ordered, counsel filed a concise statement in the orphans' court, as reflected on the docket and included in the certified record, and the court addressed Father's issues raised on appeal. As such, we discern no prejudice and decline to find waiver. **See In re K.T.E.L.**, 983 A.2d 745 (Pa. Super. 2009) (failure to file a Rule 1925(b)

_____

[12] This notice of appeal initially created a duplicate appeal at Superior Court Docket No. 818 WDA 2022, which was quashed *sua sponte* pursuant to order of September 9, 2022.

- 11 -

statement concomitantly with a children's fast track appeal is considered a defective notice of appeal and will not be dismissed since failure to file the statement is a violation of a procedural rule and not an order of court). *Cf. Mudge v. Mudge*, 6 A.3d 1031 (Pa. Super. 2011) and *J.M.R. v. J.M.*, 1 A.3d 902 (Pa. Super. 2010) (failure to file a Rule 1925(b) statement, when ordered by the Superior Court, will result in a waiver of all issues on appeal).

On appeal, Father raises the following issue for our review: "Whether the honorable [orphans'] court erred and/or abused its discretion in terminating the parental rights of [Father] when [Father], while incarcerated, had not yet been convicted of the charges against him?" Father's Brief at 4 (some capitalization omitted).[13, 14]

_____

[13] Both Mother and Father acknowledge abandoning any additional issues raised in their concise statements related to family finding and alternate family placements. Mother's Brief at 4; Father's Brief at 4.

[14] Neither Mother nor Father raised any challenge related to the court's determinations under Section 2511(b) in their concise statements or statements of questions involved. While not focused on a specific subsection of Section 2511(a), these challenges encompass Section 2511(a), not Section 2511(b). Panels of this Court have sometimes relied on *In re C.L.G.*, 956 A.2d 999 (Pa. Super. 2008) (*en banc*), to address Section 2511(b) *sua sponte*, even where the appellant has made no effort to present a challenge regarding that section. In *In re M.Z.T.M.W.*, 163 A.3d 462, 466 n.3 (Pa. Super. 2017), a panel of this Court concluded that *C.L.G.* does not require consideration of Section 2511(b) in every appeal from a decree involuntarily terminating parental rights. *Id.* (concluding that because mother failed to include a challenge to Section 2511(b) in her concise statement and statement of question involved, any challenge to that subsection was waived). Here, as Mother and Father failed to preserve any challenge to Section 2511(b), we need not address it. Notwithstanding, there was competent evidence to support the orphans' court's determination that the developmental, physical,
*(Footnote Continued Next Page)*

We review involuntary termination orders for an abuse of discretion, which our Supreme Court has explained "is limited to a determination of whether the decree of the termination court is supported by competent evidence." *In re Adoption of C.M.*, 255 A.3d 343, 358 (Pa. 2021). When applying this standard, appellate courts must accept the trial court's findings of fact and credibility determinations if they are supported by the record. *Interest of S.K.L.R.*, 256 A.3d 1108, 1123 (Pa. 2021). "Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion." *In re Adoption of L.A.K.*, 265 A.3d 580, 591 (Pa. 2021). An appellate court may reverse for an abuse of discretion "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id*.

Termination of parental rights is governed by Section 2511 of the Adoption Act. If the trial court determines the petitioner established grounds for termination under Section 2511(a) by clear and convincing evidence, then the court must assess the petition under Section 2511(b), which focuses on the child's needs and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).[15]

---

and emotional needs and welfare of the Children favors termination of Mother's and Father's parental rights. N.T., 3/8/22, at 11, 15, 17, 42-53.

[15]As previously noted, neither Mother nor Father raised any issue regarding the orphans' court application of Section 2511(b). Hence, any issue regarding Section 2511(b) has been waived.

- 13 -

In the case *sub judice*, the orphans' court terminated Mother's parental rights to M.E.C. and A.V.C. pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b).  Further, the court terminated Mother's parental rights to S.B.W. pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), and (b), and Father's parental rights to S.B.W. pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b).  We have long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a).  **See In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004).  As such, we review Section 2511(a)(2).[16]

Here, we analyze the court's termination decree pursuant to Section 2511(a)(2), which provides as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

_____

[16] While we conduct our analysis under Section 2511(a)(2), it is important to note that termination of Father's parental rights as to S.B.W. was not proper under Section 2511(a)(5) and (8) because Father was incarcerated at the time of S.B.W.'s placement in September 2021.  **See In re C.S.**, 761 A.2d 1197 (Pa. Super. 2000) (*en banc*) (stating that section 2511(a)(5) and (8) did not provide a basis for terminating the father's parental rights when he was incarcerated at the time of the child's removal from the mother's care).

- 14 -

23 Pa.C.S.A. § 2511(a)(2).

With regard to termination of parental rights pursuant to Section 2511(a)(2), we have indicated:

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re S.C.*, 247 A.3d 1097, 1104 (Pa. Super. 2021) *quoting In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa. Super. 2015) (citation omitted). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Matter of Adoption of M.A.B.*, 166 A.3d 434, 443 (Pa. Super. 2017) *quoting In re N.A.M.*, 33 A.3d 95, 100 (Pa. Super. 2011). As such, "[a] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *In re S.C.*, *supra* at 1105 *quoting In re Z.P.*, 994 A.2d at 1118.

In ***In re Adoption of S.P.***, 47 A.3d 817 (Pa. 2012), our Supreme Court, in addressing Section 2511(a)(2), concluded as follows:

> [I]ncarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under [Section] 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

***Id.*** at 828; ***see also In re D.C.D.***, 105 A.3d 662, 675 (Pa. 2014) (holding that incarceration prior to the child's birth and until the child was at least age seven renders family reunification an unrealistic goal and the court was within its discretion to terminate parental rights "notwithstanding the agency's failure" to follow court's initial directive that reunification efforts be made). The Court in ***S.P.*** further stated:

> [W]e now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S.[A.] § 2511(a)(2). [***See***, ***e.g.***, ***Adoption of J.J.,*** 515 A.2d [883, 891 (Pa. 1986)] ("[A] parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties."); [***In re***] ***E.A.P.,*** 944 A.2d [79, 85 (Pa. Super. 2008)] (holding termination under Section 2511(a)(2) was supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs).

***In re Adoption of S.P.***, 47 A.3d at 830 (footnote omitted).

Instantly, in finding grounds for termination of Mother's and Father's parental rights pursuant to Section 2511(a)(2), the orphans' court reasoned:

Pursuant to [Section] 2511(a)(2), the [C]hildren have been without essential parental care, control or subsistence necessary for their physical or mental well-being due to the repeated and continued incapacity, neglect or refusal by the parents. Due to their extended incarceration and the probability of a significant state sentence if convicted of their pending criminal charges, the conditions and causes of their incapacity, neglect or refusal cannot or will not be remedied by the parents.

Orphans' Court Opinion, 7/29/22, at 4.

In challenging the orphans' court's termination of parental rights, both Mother and Father argue that it is well-settled that "incarceration alone is not a sufficient basis for termination of parental rights." Mother's Brief at 5; Father's Brief at 9. Both proceed to note the importance of "whether a parent has utilized available resources to maintain relationships with their children." *Id.* (internal quotation marks and citations omitted).

Mother indicates the impact COVID-19 had on prison visitation and the resulting dearth of options to maintain contact. Mother's Brief at 6. She states, "[u]nless someone had the benefit of funds for telephone calls, one was left with no other option for contact other than an occasional card or letter." *Id.* Mother further baldly indicates that she applied for the Diversionary Drug Court Program and highlights her cooperation with the Commonwealth. *Id.* Mother therefore requests that disposition wait until after resolution of her criminal charges. *Id.* at 7.

Father, for his part, references that he did in fact maintain visitation with S.B.W., as afforded *via* video conferencing. Father's Brief at 9-11. Father, however, highlights S.B.W.'s age and maturity level. *Id.* at 11-12.

A review of the record supports the orphans' court's finding of grounds for termination under Section 2511(a)(2). Significantly, the record reveals a history of drug use and drug-related activity and that Mother and Father have been incarcerated since September 2021 and August 2021, respectively, stemming from drug-related charges. *See* Exhibits 2 & 3, 5/24/22 (criminal complaints); *see also* Exhibit 2, 3/8/22 (criminal history-Father); *see also* Permanency Review Order, 3/21/22, at 1-2; *see also*, N.T., 2/11/21, at 9-10, 12, 19; *see also* N.T., 5/18/21, at 9. These charges remained pending at the time of the termination hearing.[17]

Given this ongoing, unresolved behavior, it is thus speculative when and if Mother and Father will be in a position to care for the Children and provide them safety and stability. This prospect is simply unacceptable for the Children. At the time of the termination hearing, A.V.C. and M.E.C., who were almost 14 years old and approximately 14½ years old, respectively, had already been in care for approximately a year and a half. S.B.W., who was two years old, had been in care for a total of about one year.

---

[17] As noted *supra* at n.8 and n.9, subsequent to the termination hearing, Father and Mother both pleaded guilty to numerous drug-related charges. Father was scheduled to be sentenced on November 28, 2022. Mother was sentenced to a period of incarceration of four and a half to ten years, plus fifteen years' probation. Order, 9/27/22, Exhibit A; Order 12/1/22, Exhibit A.

Based on the foregoing, we discern no abuse of discretion by the court in concluding that termination pursuant to Section 2511(a)(2) is warranted. The record demonstrates that Mother's and Father's repeated and continued incapacity due to ongoing incarceration, drug use, and drug-related activity has caused the Children to be without essential parental care, control, or subsistence necessary for their physical or mental well-being. Further, the conditions and causes of Mother's and Father's incapacity cannot or will not be remedied. *See In re Adoption of S.P.*, 47 A.3d at 830; *see also In re A.D.*, 93 A.3d 888, 897 (Pa. Super. 2014) (likening a no-contact order to a long-term incarceration in finding the children without essential parental care, control, or subsistence necessary for their physical and mental well-being and failure to remedy a parenting incapacity). As this Court has stated, "[A] child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006).

We recognize that in *In re C.B.*, 230 A.3d 341 (Pa. Super. 2020), *appeal denied*, 234 A.3d 410 (Pa. 2020), this Court affirmed the orphans' court's failure to terminate parental rights due to pending criminal charges. However, unlike the instant case, in *C.B.* we focused on Section 2511(a)(5) and (8), and, in particular, the second requirement thereto, the conditions which led

to the removal and placement of the child continued to exist. *Id.* at 351. We stated:

> Evidence of a parent's pending criminal charges, in itself, does not justify termination of parental rights under either Section 2511(a)(5) or Section 2511(a)(8). In order to satisfy the second requirement of either Section 2511(a)(5) or Section 2511(a)(8), clear and convincing evidence must demonstrate the parent failed to adequately maintain the parent-child relationship taking into consideration the unique circumstances of the parent's pending criminal charges that were the direct result of the specific incidents that led to the removal and placement of the child.

*Id.* at 352. Here, we are analyzing subsection (a)(2), which does not involve consideration of whether the conditions which led to the removal and placement of the child continued to exist. Thus, we find *C.B.* inapplicable.

To the extent Mother argues that she applied to a diversionary drug court program, this argument fails. The court noted the abstract notion of this claim, and its lack of merit. Orphans' Court Opinion, 8/8/22, at 13. The court explained:

> In addition to the rationale set forth in our Supplemental Opinion, the one claimed error set forth by [] Mother is that we erred since [] Mother was an applicant for Blair County's diversional Drug Court program. At the time of hearing, it was not entirely clear if [] Mother had actually submitted a formal application for consideration. Beyond that, this argument is entirely speculative. This judge has been the presiding judge over Blair County's Drug Court program for the past 4 years. The Blair County District Attorney's Office serves as the "gatekeeper" relative to the defendants who may apply and be considered for the program. Based upon the serious nature of the charges pending against [] Mother, the amount of the weight of certain controlled substances[,] and the probability of a lengthy state sentence upon conviction, [] Mother would not have been identified as a viable candidate for the county's Drug Court program.

*Id.* With this, we agree. Mother failed to establish in the record what this program is; that she in fact applied to this program; and, most importantly, that she would be accepted.[18]

Lastly, any argument as to visitation and lack of access or lack of opportunity with respect to utilization of available resources to maintain relationships with the Children also fails as it is irrelevant to an analysis of the elements of subsection(a)(2). *See In re Adoption of S.P.*, 47 A.3d at 827-28 (noting the improper conflation with a subsection(a)(1) abandonment analysis and, as to a duty to utilize available resources to maintain a relationship, stating, "Instead, the emphasis of this passage was to impose on the incarcerated parent, pursuant to an abandonment analysis, a duty to utilize available resources to continue a relationship with his or her child."). Moreover, such argument overlooks that Mother's and Father's incarceration is a result of their own actions and behaviors.

Accordingly, based on the foregoing, we affirm the decrees terminating Mother's and Father's parental rights.

Decrees affirmed.

---

[18] The record is silent as to the nature and description of this program.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/9/2023